Bowen, J.
Is the complainant entitled-to have a decree quieting ■*his title to the whole of the lot in dispute, upon the facts [591 .above disclosed?
In answering this inquiry, it seems proper, in the first place, to ascertain when he acquired an interest in the property, and whether the defendant’s lien had not, previous thereto, been perfected by virtue of the mortgage under which he claims. This latter instrument took effect and became operative on the 26th of October, 1837, as a valid incumbrance upon the lot. Any interest in the ■same premises, afterward obtained, must be held and deferred as posterior to it.
The deed under which complainant asks to be quieted in his title took effect, as a conveyance, on the 1st of June, 1838, more than seven months after the registry of the defendant’s mortgage. This is the date of its acknowledgment. Whether it had, before that time, been signed and attested by witnesses; does not appear. The •complainant insists that the sale to him of the premises was complete, and the deed made out and signed on the 26th of May, 1837, by means of which he gained an equitable estate, and that the acknowledgment made and attached to the same deed, more than a year afterward, secured in him the legal title, which is now paramount, and should be preferred to that of the defendant. If the -evidence which has been introduced sustained this assumption, an important stop would be thereby gained by the complainant in his •effort to obtain relief. But we are not able to. give to it that effect. Wo can find no passage, in any deposition submitted to rs, which tends, with any certainty, to show that the deed was even written before the date of the certificate of acknowledgment. It is true Bissell says that “ in his record the lot is set down as convoyed May 26*1837.” When the memorandum in the record was made, or by whom it was written, or whether it be, according to *the [592 belief of the witness, true, he does not make known. But, in reply to an interrogatory propounded to him by defendant, he states that he is “ governed in his recollection as to the time of the *593 signing and acknowledgment by the deed itself, without a distinct, recollection of the precise time of either.”
This testimony, in our opinion, fails to establish the complainant’s claim that the deed passed to him as a valid contract of purchase, in 'May, 1837. It impresses upon the mind but slight, if indeed any conviction, that such was the case. The recollection of the witness does not convince his own mind, very satisfactorily, that the claim is true. But if the writing and signing of the instrument be proved to have taken place when the date purports, as we think they clearly are not by the evidence, there is no attempt to prove its delivery to complainant. It is not shown to have been offered to or held by him at any time before June, 1838. No proof whatever shows it in his possession before then, and as it could take effect Only upon delivery, the omission of that necessary act defeats wholly the character claimed for it by the complainant.
We are still further impressed with the correctness of our'conclusion in this particular by the fact that it is the only one which can, consistently with the interest 'of the grantor, be maintained. If, as it is now contended was the case, Bissell, on the 26th of May, 1837, sold for a proper consideration the premises to complainant,, and conveyed, as he supposed, the title to him, it was a fraud on defendant to induce him to accept, one month from that time, as. security for a just debt, a mortgage upon the same property. An intentional act of that kind, as this must have been if it was perpetrated, would require more ingenious powers of apology than we possess to render it any other than grossly iniquitous. There is no 593] pretense that the lot *was included in the mortgage by mistake. No explanation is offered, nor is any reason given why the complainant’s deed was not acknowledged at its date. Was its omission accidental? Then why not relieve the case by some proof on the subject? Bissell could state, without doubt, whether he forgot, or neglected, or declined, in May, 1837, to acknowledge the deed, and what circumstances led to his failure to do so. Tet he preserves total silence relative to the affair. We feel inclined, therefore, as a duty,- to adopt the most favorable view of the c'ase which is warranted by the facts before us.
The deed to complainant was executed, acknowledged, and delivered, on the 1st of June, 1838. The date, stated in the body of it, was either inserted there by mistake, or it may be that Bissell had caused the deed to be written at the date mentioned, and had *594 beld it as a blank to be used whenever he and complainant should fully concur in their views about it. To us, this most reasonable view of the case tends to relieve Bissell from the imputation of ■dishonesty respecting it, and renders the transaction at least plausible. It was consistent with fairness, and sustained by correct daily practice to convey the fee of the lot after the mortgage and ■subject to it, but not to execute a mortgage upon it after the mortgagor had parted with his fee, and held no interest or right of redemption in it.
If we are correct in our conclusions on this branch of the case,' it seems to follow, as inevitable, that the complainant has failed to show any ground for relief. But granting that the deed was written, signed, and delivered to complainant on the 26th of May, 1837, but not acknowledged till June, 1838, does he stand in any better condition ? As between him and Bissell, he could enforce a specific performance of the contract and a conveyance of the lot. Here, however, is a third party, having, as he insists, *no knowledge [594 of complainant’s equity — no intimation that he holds an imperfectly executed deed for the lot — who, in good faith, receives from Bissell a mortgage lien upon the property which he relies upon as valid, and does not learn that anything is urged by 'any one to the contrary until after his debt secured by it, has matured, and he lias foreclosed the equity of redemption. It is admitted that he had no actual notice of the existence of such equitable title in the estate conveyed to him, but it is claimed that the complainant, when “ obtaining the unacknowledged deed from Bissell, was immediately let into the open, exclusive, and notorious possession of the property, .and that he was in such possession at the time of the execution and recording of defendant’s mortgage, and that such possession is good ■constructive notice to the defendant, and to all the world, of all his rights.”
Wo recognize the doctrine as true, that if the complainant, at the date of the mortgage to defendant, had been in the actual, exclusive, and notorious possession of the property, that the defendant would have been bound, by such possession, to take notice of any and all rights of the complainant in the premises. Before we can determine against him, however, on that point, we must be assured that such constructive notice did, in fact, exist; if it did, he is chargeable with it, but not without.
The complainant owned the hotel, which occupied the front of *595, 596 two lots. Lot No. 311 adjoined them. It was vacant, and hadr during the construction of the hotel, become a sort of lumberyard, on which building and other materials had accumulated. In the spring of 1837, the complainant buys the lot in order to en-f hance the comfort and convenience of his hotel. He removes some of the lumber and rubbish therefrom, but does nothing more. 595] He docs not build upon it; he does not fence it; but his *tenant of the other lots and hotel, hangs out clothes there to dry after being washed. This is the extent of the possession held and exercised by the complainant during the season of 1837. No lease was made to Segur, the tenant of the hotel, for it, no rent paid for it, no acts of ownership by him exercised over it. Complainant was-seen once, as witness thinks, removing some of the materials from it. Should such acts of possession and control be held to give notice to purchasers, of equities and equitable titles not otherwise communicated or made known to them ?
We think the rule has never been, and should never be carried so far. There must be something in the acts which accompany possession of property, in order to give constructive notice, which can be seen and. understood — something that'will induce inquiry — that will naturally raise the question as to who may have rights there. Living on the premises, raising crops on them, the employment of' persons there in the making of improvements, accompanied by frequent acts and expressions of ownership, Would produce such notoriety, undoubtedly, as should put purchasers upon their guard, and induce investigation to acquire knowledge sufficient to enable-them to deal safely. This may not be the only means of conveying notice to strangers, and without intending to define exactly what, in all cases, will constitute constructive notice, we feel no hesitation in saying that the stretching of a clothes-line over a vacant adjoining town-lot, by the tenant of other premises, on which to hang clothes to dry,'or a casual act of removing stone, brick, or lumber therefrom, belonging to an owner who had placed them there while constructing a house on the next lot, would not charge-a bona fide purchaser or mortgagee with notice of equities in the-landlord of such tenant, or the owner who removed such materials. Something more is required. In our opinion, the evidence given 596] *in this case is inadequate to create constructive notice,, and the defendant is not divested of his priority of lien by any *597 thing which can be construed into constructive notice to him of an equity to the premises in the complainant.
There is still another objection to granting the prayer of the bill. When the defendant deposited his mortgage for record, the complainant had no pretense of claim to any more than three-fourths of the lot. The other one-fourth part of it belonged to Stickney, and was not transferred to complainant till 1839. Stickney was a tenant in common of an undivided one-fourth part of it, and might, lawfully, by himself, his tenant, or his servants, occupy and improve it. Of this title there existed actual notice on record, and-the defendant was chargeable with it. The use of the lot, or of some part of it, as a clothes-yard, by the occupants of an adjoining lot, was perfectly consistent with the interest which the defSndant was about to acquire. It was notice of the occupation of the tenant in common, and would not legally disclose or lead to any other presumption. Even if complainant did, in person, assist in clearing away the rubbish from it, or if the lot had been plowed, or fenced, during the summer of 1837, such acts were authorized by the title of Stickney, and might well be done by him. The defendant, in such case, was not bound to look beyond the authority of Stickney over the-lot. Any possession, occupancy, or use of it, which is shown to have occurred, might be 2>roporly traced to his right, as tenant in common under a valid legal title, to possess, occupy, or use it, and the defendant was excused from making further examination or inquiry into the title which ap2>eared to be in no otherwise affected.
We express no oj)inion whether the possession of the lot by the tenant was notice of anything more than the title *of the [597 tenant himself. Counsel have, in their briefs, invited our attention to the point, but the other grounds are so clearly decisive of the case, that we deem it unnecessary to pass U2>on it.
The equity of the case as' to one undivided fourth of the lot is with the complainant, and as to the other undivided three-fourths, the equity is with defendant. The case is remanded to the district court to settle any lien which defendant may have for taxes paid on the complainant’s portion of the lot, and for final decree between the parties, upon the principles here stated.
Bartley, C. J., and Swan, Brinkerhoee, and Scott, JJ., concurred.